Washington v. the Commissioner, Mr. Steinberg Good morning, may it please the Court. This is an issue that has been coming up relatively frequently and this Court has already made some rulings, but what I would like to ask the Court Well, they're not presidential anyway. Right, but what I'm going to ask the Court to do is to issue a published decision and on this issue because there's a conflict between the several circuits on this issue. It's involving rulings 004P and basically . . . and I know that at least . . . is it pronounced Toe Flat? Judge Toe Flat, you've ruled on this issue before, but basically at the administrative law judge hearing, the judge will ask a vocational expert, are there any jobs someone can do with these particular limitations? The vocational expert will say the person can do these jobs and they'll say, well, is your testimony consistent with the Dictionary of Occupational Titles and the selected characteristics of occupations, which is a companion to the Dictionary of Occupational Titles? The vocational expert will say yes. The attorney and the judge don't necessarily have access to the resources at their fingertips because there's thousands of jobs out there and they assume the vocational expert's telling the truth. After the hearing, the decision, the attorney may look up in the selected characteristics of occupations and say, wait a minute, the judge limited this person to occasional fingering. The DOT says frequent fingering. That's not true. The judge, according to at least our position is that the judge has a duty under this ruling to determine if there's an obvious or an apparent conflict with the information in the DOT. Absent the report itself, I'm talking about the ruling 00-4P, in the absence of that, is there anything either in the reg or the statute that requires the administrative law judge to do more than simply ask the VE whether there was a conflict? Actually, there's no duty in the regulations to even ask. What was happening before 1999 is there was court rulings that said the DOT would take precedence over the VE testimony and other circuits said no, the VE testimony trumps the DOT. For instance, in the Jones case, which was cited many times here, it... No, no, no. I understand that. That isn't the thrust of my question. My question is simply what obligation did the ALJ have and what's the source of the obligation? Okay. The source of the obligation is that the ruling says he has an obligation to ask the vocational expert if his testimony conflicts with the DOT and if it does, that he has to resolve the conflict and explain his basis for making his decision. It isn't enough simply to ask him whether there was a conflict. He says no and leave it at that. It depends on which circuit you're in. I'm talking about what you think we ought to be saying in this case, in this circuit. In this case, I'm saying that if it's an obvious conflict, for instance, if he says the job requires a sit-stand option, well, the sit-stand option is not in the DOT, so that wouldn't be obvious, but if you look at the selected characteristics of occupations, it's clear that it says frequent handling and fingering and the judge said... I'm just focusing. There is no question there is a conflict between what the VE says and the DOT says in this case. That's clear. All I'm asking you to tell me is what the obligation of the ALJ was in the face of a conflict between the vocational expert on the one hand and the ruling on the other, the DOT on the other. What did he have to do and did he do what he had to do? Okay. The obligation is to look at the selected characteristics of occupations and compare them to his findings to see if there's a conflict and if there wasn't a conflict, then that's... Right, but you said there was a conflict. If there is a conflict... There is a conflict here. Let's start with that assumption. What was he obliged to do that he didn't do? Resolve the conflict. Like he could have said, I've looked at the selected characteristics of occupations. I've heard the testimony of the vocational expert and I've decided to accept the information in the DOT rather than the testimony of the vocational expert because and then explain or he could say, I'm going to send supplemental interrogatories to the vocational expert. Mr. Vocational expert, you said it was consistent but it's not. Can you explain, like is it your opinion that despite what's in the DOT that the job only requires occasional fingering or were you just mistaken and do you agree with the DOT? Then once he gets that explanation, then he can accept the testimony of the VE or he can reject it. Right, but your argument is he failed to do any of that and therefore we have to do what? Remanded with directions. What do you say in the opinion? I'm sorry? What do we say in the opinion? We got to write an opinion. The opinion is that the judge did not comply with... I understand that. That doesn't tell him what he should have done. Since we already know there was a conflict, to go back and ask the vocational expert on these jobs, do you agree that there's a conflict or we already know there's a conflict, do you in your opinion based on your experience, does the job require only occasional fingering or were you just giving that opinion because of what you read or what you thought was in the DOT and give us an explanation as to why your opinion is different than the DOT and resolve that conflict as to whether you're going to accept the DOT information or the VE information? In essence, just some post hoc fact checking. Yes. He hears the testimony, he goes back to his office, looks at the DOT and the VE, compares them up and says, whoa, upon reflection, not sure the VE was right about this, supplemental interrogatories or whatever, explain yourself. Right. All right, so he has to one, identify the conflict, two, he has to explain the conflict and three, he's got to resolve the conflict. That's what the rule says and your argument is he didn't do any of that. Therefore, we have to vacate and remand. Yes. It's as simple as that. Right. Let me ask you a question. What kind of deference do we give to this Social Security ruling? Is it Skidmore deference? Is it our deference? Do we give no deference? Well, I was, here's my problem. What does it matter? It does. The regulations say that we're bound, we being the Social Security Administration, is bound by our own rulings. So there's been decisions where it says, well, the courts aren't bound by the rulings. And here's this old case that says that the court's not bound by the rulings. But I think that was applying to against the citizens, not against the government. I think the government is bound by their own rulings and the courts should enforce those rulings. And I think there was an incorrect interpretation of that old case that said the court isn't bound by the rulings. Every other circuit has said, you know, the rulings are binding. It's just a matter of how do we apply these rulings and whether it has to be an apparent conflict or obvious conflict. Well, a ruling isn't binding in the way that a statute is binding. A ruling isn't binding in the way that our case precedent is binding. Maybe we ought to give deference to it. But I don't know that we are legally bound to enforce this ruling. There may be sound reasons for doing it, but I don't know that as a matter of law we are obliged to. Have I misunderstood that? No, I think that the court, you know, if the ruling has the force, if the ruling is adopted by the governmental agency, I think the court does have the obligation. If we say that the ALJ has to resolve the conflict, we're in effect enforcing the ruling, aren't we? Right. Right. Let me ask you this about deference. Is it your position that in terms of deference, whether it's Auer or Skidmore or probably not Chevron, that that's a question, that's a statutory interpretation question? Your point is different. You say forget about that. The regulations themselves say that the ruling is binding upon the Social Security Administration itself. Right. So if the Social Security Administration violates its own rules to the prejudice of a claimant, then we've said you've got to demand. Right. But you're saying set aside the deference question. I'm talking about whether the ruling itself is binding, not on you, court, but on the administration itself. And if so, and there's prejudice, then read it. Right. So it doesn't matter what kind of deference we give. Exactly. Okay. Yeah. And that's, I mean, pretty much in a nutshell, that's my time. Thank you. Mr. Heber. Good morning, Your Honors. May it please the court. In this case, the ALJ complied with the requirements of Social Security ruling or SSR004P. Therefore, I respectfully ask this court to affirm the ALJ's decision. Are you going to go on through to the, are you sort of accepting for the purposes of your argument that the ruling is the, provides the governing sort of rule of decision? Your Honor, we treat our SSRs as binding on the agency. And I believe that the court's position is that it's, they're given deference. But we believe that the plain language of the ruling, the ALJ complied with its duties under the ruling. The ruling is very specific as to what it requires. And in this case, the ALJ complied. If there's a conflict, resolve it. Your Honor, it places . . . I mean, that's basically what it says. Your Honor, the ruling says that the ALJ has a duty to, an affirmative duty to investigate conflicts by asking about them. And so it has to ask the . . . It says more than that. If there's one to start with. That's the part of, that's the duty, the ruling gives one specific duty to investigate. It says more than that. It says more than that. Let me read it to you. Okay, Your Honor. Under the heading purpose, I'm talking about Social Security Ruling 00-4P. It says, in purpose, and I quote, in particular, this ruling emphasizes that before relying on V.E. or V.S. evidence to support a disability determination or decision, our adjudicators must, not may, must, colon, identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the V.E.s and the information in the DOT, and as burden goes beyond that, it says, and explain in the determination or decision how any conflict that has been identified has been resolved. Did this ALJ identify and obtain a reasonable explanation for a conflict between V.E. and any conflict has been resolved? And if he did that, show me, because I thought all he did was, he simply asked the V.E. one question. Was there a conflict? V.E. said no. He washed his hands, walked away, and said that was the beginning, middle, and end of his obligation. I don't see how that was the beginning, middle, and end, given what I just read you. What have I misunderstood about this rule? Your Honor, that's a broad statement at the beginning of the SSR, but the SSR goes on to be much more specific, and it spells out what the ALJ's duty is. What's your best line of the ruling that suggests that the ALJ satisfies the duty of identification, investigation, and explanation simply by asking and then by deferring to whatever old thing the V.E. said? Your Honor, I think, there's a few spots, but I think at Penn Site 4, using the West Law site, it says that the . . . Just read it exactly. Sorry? Just read it exactly. Okay. In these situations, the adjudicator will ask the V.E. or V.S. if the evidence he or she has provided conflicts with information provided in the DOT. And if the V.E. or V.S.'s evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict. Did he do that? Your Honor, he asked the V.E. . . . He fulfilled that first part of the requirement by asking the V.E. . . . Let me, I guess, stop and ask the prefatory question. The V.E.'s conclusion was there was no conflict. Yes, sir. But if you read the DOT and the V.E., the conflict jumps off the page, doesn't it? Yes, Your Honor. Okay, so the V.E. made a mistake in the answer to the question, didn't he? Your Honor, arguably, yes. However, the ALJ fulfilled his duty to investigate. The claimant's attorney could have . . . There's only one specific duty as far as inquiring about a conflict, and that's to ask the V.E. The ALJ fulfilled that. The claimant's attorney could have questioned the V.E., could have . . . But you see, here's the problem with that argument, at least for me, and I want you to help me with it. We have said repeatedly, the Supreme Court of the United States has said, that these hearings are not adversarial in nature. They're inquisitorial in nature, of the sort that the obligation falls on the decision maker, the ALJ, to compile all of the relevant evidence. He doesn't just rely on what each of the two sides do, because in many instances, the applicant is pro se, the petitioner is pro se, and so it's a very different kind of setting. It's not your normal adversarial setting where the court looks to the parties to illuminate the issues and draw the conflict together. The ALJ is supposed to do that. So it's not . . . I don't know that it would be a simple answer to say, and I think you're dead right in this record, the lawyer said nothing, sat on his thumbs, was silent throughout, right? So there was nothing there. But if his obligation transcends in this inquisitorial setting, simply relying on that, didn't he fail to live up to the terms of this ruling? I don't believe so, Your Honor. I think it's important to note a couple of things. One is that the ALJ can rely on the vocational expert's testimony under this ruling, even if it conflicts with the DOT. But there are certain procedural requirements that this ruling requires. And the vocational expert's testimony, it's good evidence. Under this ruling, it's good evidence. Let me put the question as simply as I can. One, did the ALJ recognize a conflict, and two, did he resolve a conflict? Your Honor, there was no apparent conflict at the hearing. This SSR pertains . . . No, but there's a conflict that's clear. You said earlier, you agreed with me that there was a conflict between the DOT and the VE. So whether he said it or not, if you looked at the DOT, you couldn't walk away without saying there was a conflict. Did he identify and resolve the conflict? Your Honor, he did not. But at the time of the hearing, and at the time that the ALJ issued his decision, there was no apparent conflict. The duty to resolve apparent conflicts, and if you read the plain language of the SSR, it clearly is talking about conflicts that are evident at the time of the hearing. But certainly, even at the time that the ALJ issued his decision, even at that time, there was no evident conflict on the record. So there was nothing for him to resolve. What I was asking you, though, is why would we want, stepping back, why would we want to live in a world in which we all agree here after the fact that there is, in fact, a conflict, but because the VE, intentionally or unintentionally, sort of slapped one past the goalie at the hearing, we just sort of let it go by the by? Why is that the appropriate resolution? Well, again, Your Honor, the purpose of the SSR is to develop the record. And I don't think that, especially in this case, there's no evidence that the plaintiff was prejudiced. But the purposes point to you, and it comes right out of the ruling itself, under the plaintiff's duty to fully develop the record. Judge Marcus's point to you is that this is not standard adversarial proceeding where, if the plaintiff's lawyer doesn't cross-examine the guy and fails to develop his own record, tough noogies, you lose. This is just a different kind of proceeding where the ALJ himself has an obligation to do that. You're approaching this matter as if it were a litigated case, where we're dealing with errors and waivers and things of that sort.    10 rules that we can't have 11 rules that we can't have 12 rules that we can't have 13 rule that applies where there's a lawyer and another rule where the petitioner's claimant's pro se. Well, Your Honor— In terms of the ALJ's duty. Or do you think that that's the case? Well, I would just point out that in this case, in this particular case, the claimant was represented. And the purpose of the SSR is to develop the record. It says that in there. It's part of the ALJ's duty to develop the record. And certainly our case law has held that there's a heightened duty when there's a pro se claimant. Here there was no heightened duty to develop the record. And I still—I think that a plain reading of this language, of this SSR, is very clear about the ALJ's duty to investigate. And there's a section entitled, The Responsibility to Ask About Conflicts. There's no section in the SSR that says that the ALJ's duty to research the DOT and independently search for conflicts. I think if the SSR, if it wanted the ALJ to do that, it would be in the SSR. And the fact that it's so specific about what an ALJ has to do to investigate, I think that it would basically be reading a whole new section into the SSR, asking the ALJ to investigate independently. And that's simply not in the SSR. And that has very significant implications in terms of— The ruling, right, I mean the ruling does say—we said in Jones, pre-ruling, V.E.'s testimony trumps, we used the language trumps. The ruling, meaningly, targeted at our ruling, at our decision in Jones, says neither the DOT nor the V.E. trumps. But the rule that you're asking us to adopt, whatever old thing the V.E. says, goes. You know, that the ALJ has to take the V.E. at his—as a her word, and that's the end of it. That's the end of the ALJ's duty to investigate. Isn't that—now we're just back to trumping. Right? I mean, the V.E.'s testimony is trumping. Whatever old thing he says, trumps. Well, Your Honor, to be clear, the SSR, it allows an ALJ to rely on V.E. testimony, essentially to trump the DOT. But it just requires a—has a procedural requirement for doing so, which is the ALJ has to ask. It's a one-step procedure, which is ask the question, receive the answer, and defer conclusively to that answer. Well, Your Honor, the SSR is clear that it's talking about apparent conflicts. Conflicts that are evident. So, and the ALJ has one duty to investigate that. Now if the—if a conflict becomes evident in some other manner, for example, by questioning by the claimant or the claimant's attorney, then that would also raise a duty for the ALJ to obtain a reasonable explanation. But the—the SSR is very clear about which role—what part the ALJ has to do to investigate. What about the practical point that your friend raises that it's hard—it may be hard to know on the fly whether or not there's an apparent conflict, you know, the bullets are flying in the hearing, and how is the lawyer, let alone the pro se claimant, supposed to know whether there's an apparent conflict right away and raise his hand and say, oh, Mr. ALJ, wait a minute, the V.E.'s not telling the truth? I mean, isn't there—shouldn't we make some allowance for an after-the-fact kind of post hoc fact-checking? Your Honor, at a—I understand—I think that if—if the—if it were to be investigated after the hearing, for example, if in this case the claimant's attorney had gone and looked and done that, which he could have done, gone and compared it, then the AL—then he could have submitted something after the hearing to the ALJ and said, look, you know, I want this to be—I want an explanation for this. And at that point, I think the ALJ arguably—I do think the SSR only applies to the hearing. But at that point, I think that it would be reasonable for the ALJ to investigate at that point, because it's been raised. But here, it wasn't raised before this decision was issued. It wasn't raised at the Appeals Council level. It was raised for the first time. So it's of no moment that the hearing is inquisitorial rather than adversarial, and the law puts a burden on the ALJ to serve the role of almost a continental fact finder. You know what I mean when I'm saying that? A continental system rather than an adversarial kind of system. The ALJ has a peculiar function in obtaining the relevant facts and reaching a determination. It's a very different function than a court. A court of law and general jurisdiction on each side has a burden, et cetera. This guy's got the obligation to dig up the facts, find them, and it seems to me identify and resolve a conflict. I understand your position, Your Honor. It's just— Maybe I'm misreading it, and that's why I'm just asking you to sort of help me come out what I should do with this—the ruling. And by the way, nowhere in this ruling do I see the formulation apparent conflict. I see the word conflict used three or four times, and once I see the word possible conflict. Did I miss it? Is apparent in there? There's apparent conflict. Yes, Your Honor. Where would that be? That's under resolving conflicts and occupational information. Isn't that where it is? Your Honor, it's used throughout, but— Paragraph below. Where there is an apparent unresolved conflict between V.E. evidence and the DOT. Got it. It also says if the V.E.'s evidence appears to conflict with the DOT as well, Your Honor. I understand. If I could just—one last thing— And then it follows the thing about the trumping. Yes, Your Honor. I also just want to point out that in this case, I think that there is—if there was any error, and I don't believe that there is any error under this SR, but if there was, I believe that it's harmless because the vocational expert explained that she had observed these jobs, and she testified that, particularly with the table worker job, that it did not involve fine detail work. It involved inspecting larger items, and she said that she'd been on site, observed these jobs, so she clearly has—she explained what the jobs require, and they clearly do not require more than occasional fingering. In conclusion, Your Honor, the ALJ, Your Honors, the ALJ in this case complied with the duties of SSR 004P. Therefore, I respectfully ask this Court to affirm the ALJ's decision. Thank you. Steinberg? I think we've covered everything, and I don't want to just take up five minutes of your time where you're arguing the same thing. So if you have any questions, I'd be happy to answer them. I think we understand the parties' positions. We'll go to the next case, Shaw v. Habitat for Humanity. Ms. Goodman? Thank you, Your Honor.